Case number 24-6077, United States v. Simmons. Mr. Lee. Good morning, Your Honors. I'm Josh Lee from the Colorado Federal Public Defender's Office, and I represent Mr. Simmons. This appeal challenges the district court's ruling applying a four-point enhancement from the firearm guideline that's triggered if you possess a gun in connection with another felony. And Mr. Simmons did not challenge that ruling below, but it is plain that the district court committed an error. So the offense that the district court relied on to impose the enhancement, simple possession of a firearm, is a misdemeanor. The enhancement requires another felony. The government doesn't dispute that the PSR, which the district court adopted, applied the enhancement based on Oklahoma's simple possession offense, and it doesn't dispute that that offense is a misdemeanor. So to that extent, this is a simple case. The court treated possession of a controlled dangerous substance as a misdemeanor when, in fact, it's a felony. It only gets complicated if you consider the government's arguments that the enhancement should be affirmed based on some offense other than simple possession of a controlled dangerous substance. But you actually don't have to consider any of that. The government's argument that Mr. Simmons was engaged in drug trafficking is a question of fact that the district court would have to consider on remand. Did the district court ever say, in imposing this four-level enhancement, I'm relying on your prior conviction in Oklahoma? I don't think so. No, the district court said that I'm relying on the conduct in the car in this case. Of course, the PSR talks about having a prior, but here's what the court said. The offense conduct issue here is straightforward. Mr. Simmons, based on his criminal conduct, is prohibited from having guns. He's not allowed to have guns. But on May 14, 2022, he was found at a hotel with three guns with various small quantities of illegal drugs, as well as paraphernalia used in consumption and the sale of illegal drugs. So that's what I take to be the district court's ruling, is that all of the scales, the baggies, the variety of drugs on two separate occasions that the district court knew about, as well as the defendant's statement that he didn't use cocaine, and hadn't done so for X amount of months, and yet still had a quantity of cocaine, that's the basis for the district court's ruling. So I think the district judge, when we're sitting in the courtroom today, he would say, no, what? When you said that he relied on the prior Oklahoma conviction. I don't see that in the record. I'm not saying he relied on a prior Oklahoma conviction. I'm saying that he relied on the instant conduct of possessing a gun, which was definitely not the district court's findings on this enhancement. Okay. And so he relied on possession, but he also says, as used in consumption, so it could be personal, and the sale of illegal drugs. And you have to admit, there's a lot of evidence there that suggests distribution. A couple of things. First, that wasn't the district court's finding on the enhancement. That's a totally separate part of the case. Mr. Simmons possessed the drug paraphernalia, and it's not a finding that the drug paraphernalia was actually used for distribution, as opposed to, these are things that can be used that way. If the district court thought that Mr. Simmons was engaged in drug trafficking, he would have said, looks to me like you're trafficking these drugs. It sure looks like he says that. Consumption and the sale of illegal drugs. If he thought it was all personal possession for his own consumption, including cocaine, which he says he doesn't even use, then I would think the court would have said that. So let me go back to the cocaine thing. He definitely never said that he doesn't use cocaine. He admitted to a long history of daily cocaine use. What he did say is, I haven't used it in six months, but the police took this cocaine from him before he could use it. So he definitely didn't use that cocaine, because the police took it from him. Now, in terms of what the... Let me ask it this way. You admit, or do you agree, that there is sufficient evidence here based on what was found at each of these arrests that would tie to distribution, or could be seen as tying to distribution? First, the sheer variety of the drugs. Second, the scales and so forth that are oftentimes associated with distribution. That there would be sufficient evidence for the court to say, I'm giving you four levels for possessing a firearm in connection with those drugs. Yes. And there's also sufficient evidence that the district court could say, in my capacity as fact finder, I don't think it's been proven by a preponderance of the evidence that you were distributing. But the district court didn't go on because there was no objection. Right. And that's why we need to show that there's a reasonable possibility that the district court wouldn't find distribution absent the error. Can you really be silent when there are two alternatives like that, and then come in and criticize the district court for not having anticipated that on appeal you're going to raise an argument that you didn't raise in the district court? The district court looked at the evidence and said consumption and the sale of illegal drugs, and not a peep. I would think the district court at that point would feel safe in saying, okay, they acknowledge. So, again, that wasn't the basis for the district court's application of the enhancement. There's two parts of the hearing. The district court was really clear. I'm first going to determine the guidelines range, and then after having done that, I'm going to go through the 3553A factors. He goes through the guidelines range. He applies the enhancement. He doesn't do anything except for adopt the PSR, which only is on simple possession. Then he goes to the end of the hearing, and he's like, the things that you spoke about. And I think that at most what the district court is saying is I have some concern that maybe there was some trafficking going on, which is not a finding by a preponderance of the evidence that Mr. Simmons trafficked these drugs. If he thought that, he would have said it. I think it's perfectly consistent to say I'm concerned that there's stuff in this car that could be taken as trafficking paraphernalia without thinking that had been proven by a preponderance of the evidence. And there's lots of evidence that these drugs were for his personal use. You talked about a lot of drugs being found. He has a long history of abusing all of those drugs. There was also paraphernalia consistent with use in the car. There were pipes and torches. The drugs were in small quantities consistent with use in the car. You also mentioned, like, the scales. And brass knuckles. Don't forget the brass knuckles. That's true. Scales are not inconsistent with personal use, and we don't even know that they belonged to Mr. Simmons. The district court didn't find the things that belonged to him. Whose car was it? It was Mr. Simmons' car, and it was jointly occupied by Mr. Meadows, who, for all we know, could have been his drug dealer. But all of this goes to say we're not supposed to – the district court didn't apply the enhancement based on distribution, and we're not supposed to be doing that for the first time on appeal. All we have to decide on appeal is did the district court apply the enhancement for a plainly erroneous reason? It did. All it did was adopt the PSR, which the government admits was based on Oklahoma's simple possession offense. Then, for the third prong, the question is, is it reasonable to think the district court could think distribution wasn't proven by a preponderance of the evidence? Is there a reasonable prospect of him not making that finding on remand? And I think that there is, because of the joint occupancy, because of the ambiguity in the paraphernalia that was found, because of Mr. Simmons' long history of personal use of drugs. And, you know, neither the government nor the PSR writer below ever suggested that Mr. Simmons was trafficking in these drugs. So I do think that prongs one and two here are satisfied based on the PSR and the district court's adoption of the PSR. It's the basis for its ruling. And then the government's alternative distribution argument wasn't the basis of the ruling. And the only question is whether there's a reasonable probability that we can win on that fact finding on remand. Does the unpublished decision in Shaw, if we were to adopt that position, would that be determinative on your categorical approach to the argument? So if you were to adopt Shaw, that would undermine our argument for the categorical approach. But I don't think that you need to reach the 844 issue. And if you do, Shaw is not published and it's not persuasive. So first of all, again, the only basis for the district court's ruling was Oklahoma's simple possession offense. The court didn't consider this 844 federal simple possession offense. So it's an alternative ground for affirmance. Considering that is discretionary, and the government has waived 844 as a consideration for an alternative ground for affirmance, and that's because it hasn't argued any of the factors that this court uses to consider whether to consider an alternative ground. So the court says things like, was it fully briefed below? Do you need to find facts in order to rule on this alternative ground? Was there a fair opportunity to litigate that below? The government didn't brief any of this. And I think what's even more... I sort of had the impression the government was responding to your brief because you briefed that in the first instance almost as a, I'm not sure why. Basically, you kind of came to this bottom line that we don't have under the PSR, we don't have an offense that works here. But nevertheless, I'm going to talk about all these other offenses. And then the government responded to that was the impression I had, but I'm not sure. So I think that we wanted to be really careful not to waive anything. I think we said from the very beginning, this is an alternative ground, we don't have to do this, but we want to be super careful not to waive anything. I don't think we were required to do that, but now it turns out that the government hasn't adequately briefed this. It hasn't even asserted that a non-categorical interpretation of 844 is the right one. So it's just like sometimes the defendant briefs harmless error preemptively in the opening brief. Well, if the government doesn't give a meaningful response to that, this Court treats it as a waiver. And here, Mr. Simmons preemptively briefed this 844 issue. The government never even said, actually, you did commit a felony under 844. It has only ever said, you can't win on plainness. But the plain error standard doesn't apply to this 844 issue because I'm not challenging a ruling that applied 844. With the Court's leave, I'll reserve the remainder of my time for rebuttal. Let's hear from the government. May it please the Court, David Nichols on behalf of the United States. I'll begin by addressing a couple of things that counsel just brought to the Court's attention. And start by stating the obvious. The lack of clarity by the PSR writer is what gives rise to this issue, and that is also brought before this Court on plain error because at no point did Mr. Simmons or his counsel object to it, to ask the Court what the Court was thinking. But the PSR writer uses eight words to say why the enhancement applies. Those eight words taken together do not make a crime in either the federal or the state system. It is true that the government, in my reply brief, agreed that the dangerous word that is in there comes from the federal government, and that is why it was used to apply the enhancement. The lack of that clarity, as I say, those words require something to be added or subtracted in order to make out a felony crime. I do think that, as this Court, you all have already observed, there is ample evidence in the record of the PSR that was not objected to, that the possession with intent to distribute crime could be made out. Again, because no one objected at the district court level, neither the district court nor the government had reason to amplify and build up that argument to clarify what it was. But the evidence is still in the PSR and was still before the Court. And as has been already observed, it was, I would submit, in the district court's mind when it came time for sentencing. I would also like to point out that, yes, it is true, as counsel observes, there are two parts to a sentencing hearing, but it is the same judge who is sitting in judgment of both of those. And I would submit that if you don't, as a defense, as a defense at the district court level, if you don't ask him to clarify his thoughts during the objections phase, during the determination of guidelines phase, it doesn't detract from the fact that he is clarifying his thoughts in the later sentencing phase. I would also submit that so if we knew that the district court were relying on the Oklahoma offense and not on the scales and brass knuckles and distribution evidence, which was undisputed, would we affirm or would we send it back? And if I understand Your Honor correctly, if we were to assume the district court were relying on Oklahoma simple possession, then yes, I think it would be... Has the PSR and the AUSA kind of misled the court, too, by not explaining paragraph 24 better? I would agree that the AUSA, being myself, should have explained that better in the moment. But what I would point out that is crucial for what the district court might have been thinking about the enhancement is the word simple, which has been bandied about here, is not used at all in the PSR writer's paragraph about why the four points applies. All right. So if the district court thought it was relying simply on whether this was an Oklahoma felony, and yet we look at the record and we see the words out of the district court's mouth that this also looks like distribution, as I read them, then do we assume that the district court, if it had been challenged on the Oklahoma felony offense basis, would have said, oh, it's distribution? Or should we send it back and have the district court tell us? I would submit that what Your Honor has already read into the proceeding today shows us what the district court was thinking. I don't think there's a mystery about whether the district court thought there was at least the possibility that he was possessing a firearm in conjunction with the sale of the drugs that he had with him. The problem is the written word in the paragraph in the PSR doesn't say distribution. Yes, Your Honor. It also does not say simple. That's why when I say the PSR writer lacks clarity to base it on, the eight words it puts out don't make out a felony in either system or a misdemeanor in either system. To say the felony of possession of controlled substance after prior conviction for a drug offense, that would make the federal drug possession statute. To add the felony possession of a controlled substance with the intent to distribute, that would also add it. The only way it does become something that I would submit would be sent back as if, in fact, the district court was mistakenly applying it based on the misdemeanor or simple possession statute in Oklahoma. I submit that the record before both the district court and before Your Honors that that's simply not what happened. There was unobjective to evidence. Well, can I stop you there for a minute? I guess I want to make sure I understand your argument. If we agree with the defendant here that the specific language in the PSR which was adopted with no objection, no discussion by the district court would seemingly refer to the Oklahoma drug possession statute by using the specific phrase controlled dangerous substance. You both seem to agree that refers to the Oklahoma drug possession statute. Nobody objects. District court adopts it. If we agree that that's what it was and that was the offense and we know that doesn't support the application of 2K21B6B now, don't we reverse? What basis would we have for considering anything else or even remanding to the district court? I think the basis that this court . . . If it says what it says and that's what the court adopted and that's what we believe it says, why would we remand or conduct an analysis on our own of other possibilities? I would say the most direct response to that is the fact that the district court doesn't adopt just paragraph 24A. It adopts the unobjective to portions of the entire PSR, which I submit is what the district court . . . Paragraph 24A is specifically referring to the specific offense characteristics and adding the enhancement. I mean, that's fairly specific. Yes, but I would submit that it's not specific enough to say that . . . So we're supposed to take what's fairly specific and turn it into something ambiguous? Is that what you're saying? Well, I would first submit that the paragraph 24A, the language that the PSR writer uses, firearm in connection with the felony offense of possession of a controlled dangerous substance, including methamphetamine and fentanyl. If you . . . I would say that's not as clear as Your Honor might be suggesting it is, simply because, as I said before, there are a multitude of things that that could have made out, but it doesn't actually make out anything. And yet possession of a controlled dangerous substance, you agreed in your brief, seems to clearly invoke Oklahoma's drug possession statute. The word dangerous does, I would agree. I thought it was the controlled dangerous substance. Just dangerous? It's just the specific word dangerous is the only one that distinguishes between Oklahoma and the federal statute. Okay. So I think the PSR . . . That word does distinguish between the Oklahoma and the federal? Yes, it appears in the Oklahoma statute, not the federal statute. Okay. So are you making a harmless error argument that, granted, we're stuck with paragraph 24, we wish we could go back in time, we have to live with it, but if you send it back, it's going to be the same thing because the district court later said distribution and the evidence that was agreed to and not objected to in the PSR is sufficient to support distribution. Is your argument harmless error? I believe, to the extent this court believes there was an error, yes, I do believe it would be a harmless error. Did you make a harmless error argument in your brief? I didn't see any justification for . . . that's what I'm trying to ask you. What is the justification if we do think 24A is specific, what is the justification for bypassing that and on our own looking at other offenses? I didn't see any justification in your brief for that. Governor, I think the . . . You didn't argue harmless error, you didn't argue firm on an alternative basis or anything else. I'll start at the end of that. I don't believe it's an alternative basis. What's before the court is whether the district court, who was, again, not asked to clarify any of this at the sentencing level, was looking at the packet of information it knew about Mr. Simmons and about his various arrests and finding a felony drug crime that gave rise to that four-point enhancement. So, regardless, I don't think it's an alternative basis to ask to have the court observe that there was ample evidence about possession with intent as well as, I would argue, evidence that he had the federal crime of possession of controlled substance before him. Mostly because the district court, again, was not asked to clarify it at the time, but had evidence before it. I would submit to the court that the district court believed the four-point enhancement applied based on connection to another offense, and based on what the district court said in its sentencing, I would submit that he believed that offense to be the possession with intent to distribute. So, to that extent, I do think that there is a basis for it, and I do think that there's not . . . Obviously, ultimately, the harmless error analysis asked that there be substantial possibility that things did not play out the way they did. And to Your Honor's earlier point, yes, I do believe that if we were to ask the district court, he would likely say that he believed there was possession with intent to distribute evidence before him, which gave rise to the four-point enhancement. I would also observe that the plain error review, as Your Honors know, is a rather protective review towards the district court. To send it back, based on the lack of objection, the lack of being able to demonstrate clearly that the substance of rights were affected and would have played out differently, would be to allow a defendant at the sentencing level to simply establish and set up an appeal by keeping mum, by not asking clarification, not objecting. So I would submit that that would be an inappropriate thing to do in this situation, simply because the district court had before it all the evidence that was previously discussed, and to the extent that an appeal is triumph of hindsight, to come along now and have the appellant try to pick apart what the district court was making of all the evidence before it, is somewhat both inefficient and also unfair to the district judge under a plain error review, which is also meant to shield the district judge in situations like this. So for that reason, I do think that when we look at the plain error analysis, yes, there has to be an error, the error must be plain, and the error must affect his substantial rights. So I would submit that on the third prong, certainly it fails. On the second prong, I don't believe the error was plain. The only way it becomes a plain error is if you do believe that the judge erroneously believed that possession was a felony in Oklahoma's state system, which I submit is unlikely, given the fact that the district court judge has been a judge, has been a practitioner in the state of Oklahoma for a significant number of years and would have been certainly not under the impression that Oklahoma's simple possession statute was a felony. So when we get to the sentencing phase and he is saying things like the possession and use of, use and sale of controlled substances, that all speaks to someone who has evidence before him, I would submit, that he believed the firearm was possessed in connection with the potential sale of drugs. What about the cocaine? As Your Honor pointed out earlier, I think, as I said in my brief also, the cocaine is the most glaring example. Mr. Simmons in his PSR interview admits to using a great variety of drugs right up to the very day he's arrested in many cases, but makes it point to demonstrate that a significant amount of time passed where he did not use cocaine. So when you add that into the fact that he has, I would argue, more drugs than any one person is going to use in a scenario, that speaks to someone who might be trying to offload them or distribute them. It's also relevant to point out they are a small amount of drugs. There is no element in the crime of possession with intent that requires you to be a good drug dealer. It simply requires you to be with the intent to distribute those drugs. Where is the cocaine in that PSR? You're saying it's in the PSR, right? Yes. It stems from his second arrest, which happens while he's out on bond, the June arrest, which PSR paints as taking place at a Walmart. And there's extensive discussion of that arrest related to the shoplifting aspect of it. Do you know a paragraph? 17. If I could briefly touch upon the question of the categorical approach. Your Honor mentioned the Shaw case. I do think I took some issue with the appellant's argument that that is not persuasive. This court has the published opinion in Romero, which I provided in my 28J letter, which is 132F4-1208, which recognizes the fact that even in the context of plain error review, even unpublished opinions can be persuasive on the question of whether or not the district court committed plain error. So to the extent that we consider this as the federal crime of possession, I would submit it would not have been plain error for the district court to say, you have the prior qualifying conviction to make this a federal possession of controlled substance. And therefore, in light of Shaw, and I would submit Romero, that also could not have been a plain error that would require relief. Just back to cocaine for a second. I see in 17 it references the 2.7 grams of cocaine that were seized. But is it in the PSR that he told the PSR author, I don't use cocaine, or I haven't used cocaine for X months? You rely on that in your brief, I know you do. But what is there to show that the district court even knew about that? I do not have a reference for it in the PSR, but I do believe there's a section of the PSR where they inquire of a defendant about their substance abuse history. And there's a chart laid out on it where he has methamphetamine was used up to this date however many times a week or a day. And it lays out each of the drugs. Cocaine is the only notable exception where he, I believe basically the only notable exception where he doesn't admit to using it substantially right up to the time of his arrest. All right. I guess you're talking about paragraph 77, substance abuse history. Last used June, or 2021, frequency used daily. And then you're suggesting from that that he's admitted that he doesn't use the cocaine that he's found with. There's a little speculation there, I suppose. There is some, if I may ask him over time, if I could respond to that briefly. There is some, but to your Honor's point, he says he stops using it, I believe in September of 2021. This arrest happens in May of 2022. So is he last used? Maybe that's the last chance he had to have cocaine. It is possible, but he was out of custody and living his life up to the time he was arrested on May 14th for this offense. And it's the cocaine comes in the second arrest, which happens in June of 2022. So I would submit that does, yes, it does call for some speculation, but I would submit that it speaks to someone who's not used it in that amount of time, but has acquired it in the context of sale. Thank you, Counsel. Mr. Lee, you had some rebuttal time. Your Honor, when he was a judge on this court, Justice Gorsuch says it's better to know on remand than to guess on appeal. Here, what we have is we do know why the district court imposed this particular enhancement. He imposed it for possession of a controlled dangerous substance because he adopted the PSR and that's what the PSR said. So that was plainly erroneous. Then we get into, you know, was the district court saying maybe he thought he was distributing? You know, the government described it as he's concerned with the possibility that it was possessed in connection with distribution. We don't know what the district court thought for sure. The record is too ambiguous. The facts cut both ways. And that favors a remand in this case. Thank you. Thank you, Counsel. Counselor excused and the case is submitted.